BOWEN, Presiding Judge.
Dewey Lee Jones was convicted for the murder of Tony Hames. That conviction was reversed on appeal. Jones v. State, 488 So.2d 48 (Ala.Cr.App.1986). On retrial, Jones was convicted of murder, sentenced to thirty-three years’ imprisonment, and ordered to pay restitution in the amount of $2,400. This appeal is from that second conviction. Two issues are presented.
I
The trial court properly denied the defendant’s challenges for cause to five persons on the jury venire.
After the venire had been questioned by the trial court and the attorneys, the following occurred:
“MR. ROGERS [Defense Counsel]: Judge, we challenge for cause Mrs. Butler. She simply said that there was no circumstance where she could find somebody who would be so intoxicated that they were not able to form a mental intent, and Mr. Hayes and Mr. Letson, for saying that they could move, that they wouldn’t be that way; Mrs. Rita Pearson. She said that even though they couldn’t form the mental intent, she felt like they ought to have had to get some help before and would hold it against them; and Mrs. Dora Williams. Those are the ones that we challenge for cause.
“MR. LITTRELL [District Attorney]: Judge, all these people said that they could follow the Court’s instructions as best they could.
“THE COURT: (To the Jury Venire) Mrs. Mala Butler—
“JUROR BUTLER: Uh-huh.
“THE COURT: —would you please stand?
“(WHEREUPON JUROR MALA BUTLER STOOD UP)
“THE COURT: If you were selected to be a member of the jury to try Dewey Jones, would you listen to the evidence that is given from the witness stand and admitted by the Court and then follow the instructions of the Court on what law applies to this case, and then base your verdict solely on that without being influenced by anything outside the trial?
“JUROR BUTLER: Yes, sir.
“THE COURT: Thank you. All right. Roderick Hayes, I will ask you the same questions?
“JUROR HAYES: The only thing is, I would have a problem to what Mr. Rogers was talking about.
“THE COURT: Well, the main thing would be, would you follow the instructions of the Court?
“JUROR HAYES: Yes, sir.
“THE COURT: Okay. You can take your seat. Mr. Letson, I will ask you the same questions.
“JUROR LETSON: Yes, sir, I could follow the Court’s instructions. I think the confusion was that he was asking us to look into Mr. Jones’ head at the time the crime was committed.
“THE COURT: All right. Mrs. Pearson?
“JUROR PEARSON: Yes, sir.
“THE COURT: Did you understand the questions of the Court?
“JUROR PEARSON: Yes, sir.
“THE COURT: Okay. Could you base your decision solely on the evidence and the law as the Court gives it to you without being influenced without any ideas that you may have which are outside of this trial?
“JUROR PEARSON: Yes, sir.
*1333 “THE COURT: Okay. Thank you. Mrs. Dora Williams?
“JUROR WILLIAMS: Yes, sir.
“THE COURT: Okay. Thank you. All right, those challenges will be denied. Any other challenges as to the venire?
“MR. ROGERS: We take exception Judge.”
The controlling principles are stated in Barbee v. State, 395 So.2d 1128, 1130-31 (Ala.Cr.App.1981):
“Generally, a juror is incompetent who has such personal opinions with respect to the subject matter of the suit, or conscientious scruples, on any subject, as would influence his verdict. The test to be applied is can the juror eliminate the influence of his scruples and render a verdict according to the evidence. Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples. The determination of this question is based on the juror’s answers and demeanor and is within the sound discretion of the trial judge. Tidmore. A juror is incompetent whose answers show that he would follow his own views regardless of the instructions of the court.”
“Where a juror indicates he has personal opinions or scruples regarding the subject matter of the case, he will not be rendered incompetent thereby if he indicates that he will try the case fairly and impartially according to the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Cr.App.1977), cert. denied, 356 So.2d 234 (Ala.1978).” Thomas v. State, 373 So.2d 1167, 1169 (Ala.1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980).
II
We find no reversible error in the prosecutor’s attempt on cross examination of the defendant’s daughter to show that the defendant and his wife had been intoxicated “for about two or three weeks preceding” the shooting. Although the trial court did not “see the materiality of it” he allowed the prosecutor to pursue this line of questioning and establish that the defendant and his wife had been drinking “off and on” for two or three weeks before the shooting. The defendant’s daughter testified to this fact and also stated, “They weren’t drunk just straight, you know, but at times, yes, they did get drunk, but they didn’t just stay drunk for three weeks.”
Even if the admission of this testimony were error, C. Gamble, McElroy’s Alabama Evidence, § 60.03(2) (3d ed. 1977) (“[T]he courts will not admit prior acts of intoxication or drinking which are remote or not relevant to show that he was intoxicated at the time in issue.”), we find that it was only harmless error because of the prior admission of similar testimony and because it was favorable to the defense. Before the objection, the defendant’s daughter had already testified, without objection, that her parents “were drinking heavy during this time period,” and were drinking “a lot of the time.”
During the State’s case-in-chief, testimony was elicited, without objection, that the defendant and his wife had been drinking for “a couple of days” prior to the shooting, and that, on the morning of the shooting, they had consumed one case of beer. There was evidence that the defendant was drunk before and after the shooting, and even testimony that he was so drunk he could not see the victim sitting across the room.
Although the evidence of intoxication introduced after objection covered a period of two or three weeks while the evidence of intoxication introduced before objection involved only “a couple of days,” we find that the effect of the evidence both before and after objection was similar. Therefore, we apply the rule that “[i]t is not error to allow the same facts to be again shown against objection when they have already been proven without objection.” Bush v. State, 282 Ala. 134, 139, 209 So.2d 416 (1968). “The rule is that testimony apparently illegal upon admission may be ren *1334 dered prejudicially innocuous by subsequent [or prior] legal testimony to the same effect or from which the same facts can be inferred.” Yelton v. State, 294 Ala. 340, 342, 317 So.2d 331 (1974); Bell v. State, 466 So.2d 167, 174 (Ala.Cr.App.1985).
Additionally, the defendant filed a plea of not guilty by reason of insanity and the trial court charged the jury on intoxication. Under these circumstances, evidence that the defendant and his wife had been drinking a substantial period of time before the shooting was favorable to the defense. Where the answers are “exculpatory and distinctly beneficial” to the accused, the overruling of objections to questions constitutes “no error.” Talley v. State, 174 Ala. 101, 57 So. 445, 446 (1912).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.